## AMERICAN INDEMNITY CO. v. JAMISON.
### No. 4289.

Court of Civil Appeals of Texas. Texarkana. March 1, 1933.

Rehearing Denied March 9, 1933.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

A. L. Robbins, of Clarksville, for appellee.

JOHNSON, Chief Justice.

For a statement of the case we refer to the opinion on former appeal, (Tex. Civ. App.) 42 S.W.(2d) 801, except as herein noted for the purpose of considering the matters presented on this appeal.

Appellant assigns as error the action of the trial court in sustaining appellee's special exceptions to paragraphs 3 and 4 of defendant's amended answer. The pleadings so stricken out allege, as a defense and estoppel to plaintiff's right to recover, substantially, the following facts: That plaintiff was a married man; that the insured automobile was community property; that it was purchased for use of the family, especially the wife; that it was with plaintiff's knowledge and consent that his wife was driving the automobile when wrecked; that she was negligent in not keeping a proper lookout for traffic; did not have the automobile under control; and was at the time violating article 794 of the Penal Code of the State of Texas, in that she was driving it on a public highway at a rate of speed in excess of fifteen miles per hour, to wit, thirty or thirty-five miles per hour, while passing another automobile driven in the opposite direction; and by suddenly pulling or steering the car to the right on a graveled shoulder of the highway, the rear wheel skidded, she lost control, the car went into the ditch, turned over several times, wrecked.

Appellant contends, in substance, that: By reason of the wife's acts, proximately causing the loss or injury to the automobile, being in violation of the Penal Code, and negligence per se, the plaintiff cannot recover upon the policy of insurance indemnifying him against loss or injury to the automobile resulting from "accidental collision or upset." That construed in the light of the dangerous character of the subject-matter of the contract (an automobile), and the situation and relation of the parties thereto, it should be held that there was an implied obligation on appellee that he would operate the automobile in a careful manner, not in violation of the law. That the parties did not have in mind to, and that appellant did not thereby contract to, insure appellee against a loss or injury to his automobile resulting from a violation of the law, constituting negligence, on the part of appellee or his wife. That the word "accident" as used in the insuring con-

tract should be given a restricted meaning to exclude "accidental collision and upsets" resulting from acts of appellee or his wife in violation of the law, constituting negligence per se.

To give the word "accident" the restricted meaning cited by appellant in support of its contention, 1 C. J. § 5, p. 392, "to be an occurrence to which human fault does not contribute," would reduce the insurance clause to cover only those unusual and unexpected accidental collisions and upsets of an automobile happening without negligence. We do not find this to be the rule of construction placed upon the word, as is more fully shown by the text cited by appellant, when applied to accidental insurance, and as placed upon it by the appellate courts of other states. In legal contemplation "accident" represents the opposite of "intent," 1 C. J. § 4, p. 392; and in its most commonly accepted meaning the word denotes an event that takes place without one's foresight or expectation, 1 C. J. § 3, p. 392; and does not exclude that human fault called negligence, but is recognized as an occurrence arising from the carelessness of men, 1 C. J. § 5, p. 393. And quoting from the same text, section 44, p. 417, we find the rule of construction to be: "The terms used in an accident insurance policy should be construed in their plain, ordinary, and popular sense." And section 72, p. 425: "The terms 'accident' and 'accidental' as used in insurance policies covering death or injuries by accident, or accidental means, are presumed to be employed in their ordinary and popular sense * * * and the definition does not exclude an injury caused in part by the negligence of the insured." And section 123, p. 450: "In the absence of any stipulation in the policy relative to the matter, the negligence of the insured will not affect the liability of the insurer." And section 225, p. 487: "The contract evidenced by a policy of accident insurance is entered into by the insured for the purpose of obtaining protection in case of accidental injuries, whether or not they result from thoughtlessness, carelessness, or negligence; and it is accordingly well settled that it is no defense to an action on such a policy that the negligence of the insured caused or contributed to the injury, unless, of course, the policy expressly excepts from the risk accidents due to insured's negligence." The above rules of construction have been followed by the following courts and others: Fireman's Fund Ins. Co. v. Haley, 129 Miss. 525, 529, 92 So. 635, 23 A. L. R. 1470; Messersmith v. Amer. Fidelity Co., 232 N. Y. 161, 133 N. E. 432, 19 A. L. R. 876; McMahon v. Hanna Pearlman et al., 242 Mass. 367, 136 N. E. 154, 23 A. L. R. 1467; Pawlicki v. Hollenbeck, 250 Mich. 38, 229 N. W. 626; Security Underwriters v. Rousch Motor Co., 88 Ind. App. 112, 161 N. E. 569. There are no words or phrases in the policy of insurance issued by appellant to appellee in this case which in any way modify, limit, or restrict the ordinary and customary meaning of the word "accident," as applied to accidental collisions or upsets in the insuring clauses of the policy. We are of the opinion that the appellant would be bound by the previous constructions placed upon the word as applied to accidental insurance. The assignment is overruled.

■ As the limitation of liability and method of determining same, the policy in question provided: "This Company's liability for loss or damage to the automobile described herein shall not exceed the actual cash value thereof at the time any loss or damage occurs * * * nor what it would then cost to repair or replace the automobile or parts thereof with others of a like kind and quality."

The jury found, in response to issues submitted by the court, that $950 was the actual cash value of the automobile immediately prior to the accident, and that $50 was its actual cash value immediately after the accident; and that it would cost $1,025 to repair it. On these findings the court entered judgment in favor of appellee against appellant for $900 and interest at 6 per cent. from October 10, 1930, a date found by the court to be more than sixty days after plaintiff has furnished defendant with proof of loss. The appellant contends that it was shown that the automobile was not a total loss, and the court erred in entering judgment for the difference in value before and after the accident. The provisions of the policy above quoted set two limitations of the insurer's liability. First, not to exceed the value of the automobile at the time of the accident, which in this case was found to be $950; second, not to exceed the cost of repairing, which in this case the jury found to be $1,025. The cost of repairs exceeding the difference in value of the automobile before and after the accident, it appears to us that the trial court then correctly determined the extent of plaintiff's damage, and the limit of defendant's liability, to be the difference between the value of the automobile before and after the accident. Herrin Transfer & Warehouse Co. v. Carter Produce Co. (Tex. Civ. App.) 50 S.W.(2d) 458; Campbell v. Johnson (Tex. Civ. App.) 284 S. W. 261; El Paso Electric Co v. Collins (Tex. Civ. App. 10 S.W.(2d) 397; Standard Accident Ins. Co. v. Richmond (Tex. Civ. App.) 297 S. W. 879; Thomas v. Goulette (Tex. Civ. App.) 12 S.W. (2d) 829; White v. Beaumont Imp. Co. (Tex. Civ. App.) 21 S.W.(2d) 559; Morris v. Ridenour (Tex. Civ. App.) 43 S.W.(2d) 147.

■ Appellant further contends that the testimony on which the jury based its findings of values was incredible and unreasonable, especially upon which they found the cost of repairing to be within $5 of the original purchase price of the automobile. This testimony might appear to be a little "stout"; but when

we turn to the statement of facts, it appears to be the "confessions" of honest mechanics. At any rate, it is given a satisfactory explanation, in that mass production by facilities of the factory is much cheaper than single assembly by a mechanic in a garage. We cannot say this is incredible or unreasonable. The evidence is sufficient to support the findings of the jury.

Appellant's assignments having been carefully considered, they are overruled, and the case is affirmed.