HOME MUTUAL INSURANCE COMPANY, APPELLANT, V. INSURANCE COMPANY OF NORTH AMERICA, Respondent.

*April 3—April 30, 1963.*

For the appellant there was a brief by *Byrne, Bubolz & Spanagel*, attorneys, and *William S. Pfankuch* of counsel, all of Appleton, and oral argument by *Mr. Pfankuch.*

For the respondent there was a brief by *Peickert, Anderson & Fisher*, attorneys, and *John E. Shannon, Jr.*, and *Gerald M. O'Brien* of counsel, all of Stevens Point, and oral argument by *Hiram D. Anderson, Jr.*

WILKIE, J. The sole issue in this case is whether the negligent acts of Frank Suchon, a Texaco station employee, even though occurring on the premises of Super Service, were "incidental to" or "in connection with" the operation of the Texaco station, bringing the mishap within the hazards covered by the I.N.A. policy as described in its policy as follows:

"The ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage, or public parking place, *and all operations necessary or incidental thereto;* and the use in connection with the above-defined operations of any automobile not owned or hired by the named insured, a partner therein or a member of the household of any such person." (Emphasis added.)

The Home Mutual policy contained an identical provision.

Both parties contend, and we agree, that this is a case of first impression in Wisconsin.

The whole controversy involves an interpretation of the quoted language used in the I.N.A. policy. The established rule, of course, is that in interpreting and construing an insurance contract (in fact, all contracts), the objective should be to ascertain the true intention of the parties. *Aero Motive Sales Corp. v. Wausau Motor Parts Co.* (1950), 256 Wis. 586, 42 N. W. (2d) 141; *Siler v. Read*

*Investment Co.* (1956), 273 Wis. 255, 77 N. W. (2d) 504. A subordinate ruling is that in ascertaining the intention of the parties, a practical construction is most persuasive. *Taylor v. Hill* (1893), 86 Wis. 99, 56 N. W. 738; *Carlson v. Scandia Life Ins. Co.* (1919), 170 Wis. 342, 174 N. W. 896; *Prudential Ins. Co. v. Paris Mut. Fire Ins. Co.* (1933), 213 Wis. 63, 250 N. W. 851. Each of the policies here contains the same provision actually defining the word "premises" so as to limit that word to the actual filling station and the ways immediately adjoining. Both of the policies also extend coverage to "operations necessary or incidental thereto" (meaning operations necessary or incidental to the business designated).

There have been no cases holding the type of operation here to be "incidental to" the operation of the Texaco station as distinguished from the Super Service station. Counsel for Home Mutual relies on four non-Wisconsin cases, all of which clearly involve an operation "incidental to" the conduct of a garage business. In each case there is a very positive relationship between the third-party customer and the garage and it is very obvious that the service being rendered is as a result of a direct contract made between the customer and the garage. Thus in *General Finance Co. v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co.* (1944), 348 Pa. 358, 35 Atl. (2d) 409, an independent contractor was hired by the plaintiff to go and pick up a repossessed automobile in another city and while en route there was an accident. The court held that the activity of repossessing automobiles was incidental to the primary business of the insured and that therefore there was coverage. In *Lloyds Casualty Insurer v. McCrary* (1950), 149 Tex. 172, 229 S. W. (2d) 605, an accident occurred when the insured appliance company was in the process, off the premises, of installing an appliance in the home of a customer who had purchased the appliance. Again the court held that this was incidental to the main activity of the

company, even though the accident did not take place on its actual premises. In *Arditi v. Massachusetts Bonding & Ins. Co.* (Mo. 1958), 315 S. W. (2d) 736, coverage was ruled where an insured had repaired a truck and was involved in an accident on the way to deliver the truck to the customer. Finally, in *Kalamazoo Auto Sales Co. v. Travelers Ins. Co.* (1924), 227 Mich. 74, 198 N. W. 579, an automobile sales agency operated a motorboat for the purposes of entertaining its customers. There was an accident on the lake while such entertainment was in process and again the court ruled that this was incidental and necessary to the conduct of the automobile sales agency.

In the instant case there is no such fact situation. At no time was there any direct agreement between the customer and anybody at the Texaco station. The customer did not make any request that the Texaco station actually make the repairs, nor did the customer request that the Texaco people arrange for a ride home. In the end the internal arrangement as between the two service stations was such that the repair work was farmed out to Texaco and on the informal exchange of personnel, a Texaco man actually ended up driving the car home. It cannot be said to be a practical construction of the I.N.A. contract to extend coverage to each and every act of negligence on the part of a Texaco employee who happened to be used for the moment by the Super Service station to actually perform a responsibility that the customer looked upon as the responsibility of the Super Service station.

Some consideration has to be given to the fact that Mr. Schultz in this case definitely had two separate policies for the two separate premises. In the case of *Hardware Mut. Casualty Co. v. Hartford Accident & Indemnity Co.* (1959), 6 Wis. (2d) 457, 95 N. W. (2d) 215, a young boy fell into a pile of hot ashes on the high-school premises in Stevens Point. Hartford insured the schools and attempted to involve Hardware Mutual, which insured the city of

Stevens Point generally. The court ruled against this assertion on the grounds that the two policies did not overlap, and that there was no intention for the city policy to insure the schools. Similarly, in the instant case it would take quite a stretching of the policies to say that the company and the insured intended to include in the coverage of the Texaco station any even remote operation that would involve an employee of the Texaco station but which would not really involve an activity or operation of the Texaco station itself.

Black's Law Dictionary (4th ed.), defines "incidental" as "depending upon or appertaining to something else as primary; . . . something incidental to the main purpose."

A practical construction of the provisions of the I.N.A. policy requires a more-direct relationship between the customer and the Texaco activities. If the facts in this case were different in that the original arrangements for the repair of the car were made directly between the customer and the Texaco station, or if at the end of the day the ride home was directly requested by the customer of the Texaco people and they agreed to furnish it, then in either case there would be the type of direct relationship which would make the Texaco activity one that is really incidental to its operations. Since neither of these factors is present here, it is not an unfair construction of the I.N.A. policy, nor is it inequitable to hold that the only coverage available is under the Home Mutual policy.

Such a construction with such a result can fairly be said to represent the actual intentions of the parties and to really make sense out of the issuance of separate policies by separate companies covering the two separate premises and operations incidental thereto.

*By the Court.*—Judgment affirmed.

Currie, J., dissents.